IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

PHILLIPS 66 COMPANY,

     Plaintiff,

v.                                                           Civil Action No. 7:13-CV-63 (HL)

GISH OIL COMPANY, *et al.*,

     Defendants.

## ORDER

Before the Court are the Motion for Summary Judgment (Doc. 17) by Plaintiff Phillips 66 Company ("Phillips 66" or "Plaintiff") and the Motion for Summary Judgment (Doc. 20) by Defendants Gish Oil Company, Raymon Gish,[1] and Helen Gish (collectively "Defendants"). For the reasons stated below, the Gish Defendants' motion is denied, and Phillips 66's motion is granted in part, with the Court reserving its ruling on the remainder of the motion.

## I.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322,

---

[1] Subsequent to the filing of this lawsuit, Raymon Gish passed away, and Helen Gish, as executor of the Estate of Raymon Gish, was substituted in his place as a defendant. (Order, Doc. 40).

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See*

Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## II.    Factual Background

This case arises from a contract between Phillips Petroleum ("Phillips"), a predecessor to Phillips 66, and the Gish Oil Company ("Gish Oil"). The material facts in this case are straightforward and undisputed. Gish Oil is a petroleum supplier or "marketer," meaning that it is a wholesale distributor. Gish Oil has been a marketer for Phillips Petroleum or one of its affiliated companies since 1968. Until recently, Gish Oil's primary business was purchasing gasoline from a branded oil company, such as Phillips, at fuel terminals for the wholesale price or "rack rate" price, and then providing the gasoline to its customers, known as "dealers," who are the owners and/or operators of retail gas stations and convenience stores. (Defendants' Statement of Material Facts ("Defendants' SMF"), Doc. 20-1, ¶¶1-3). In 1985, Raymon and Helen Gish executed a guaranty ("the Gish Guaranty") for all of Gish Oil's present or future indebtedness to Phillips in exchange for Phillips's entering into agreements with Gish Oil, among other things. The Gish Guaranty applied to all agreements between Gish Oil and Phillips unless and until Raymon and Helen Gish notified Phillips in writing not to

enter future agreements based on the guaranty. (Facts and Procedural History in Phillips 66's Motion for Summary Judgment Brief ("Plaintiff's Facts"), Doc. 18, ¶3).

Around February 1998, Phillips approached Gish Oil about participating in a New Construction Incentive Program ("NCIP Program") for one of the businesses to which it was supplying gasoline. This store, known as the "Baytree Convenience Store," is located at 911 Baytree Road, Valdosta, Georgia.[2] It was already a Phillips-branded gas station in 1998. By entering the NCIP Program, Gish Oil would be required to make extensive improvements to the Baytree Convenience Store, including installing multiple fuel pumps, building a free-standing canopy, erecting light poles and additional signs, adding brick and stone materials to the existing building, displaying Phillips insignia and imaging, and utilizing credit card machines that would accept Phillips-branded credit cards. As incentives for Gish Oil's improvements to the Baytree store, Phillips offered to pay rebates on gasoline Gish Oil purchased from Phillips over a certain period of time. (Defendants' SMF, ¶¶4-6, 11).

Gish Oil decided to enter the NCIP Program for the Baytree Convenience Store, and on February 24, 1998, Raymon Gish, as president of Gish Oil, signed

---

[2] It is unclear from the record whether Gish Oil owned the Baytree Convenience Store, whether Raymon and Helen Gish owned the store through some other company, or if a different entity entirely was the owner. In any case, resolving the question of ownership is not necessary for the adjudication of this case.

a contract ("the NCIP Agreement") with Phillips to that end. The Gish Guaranty was still in place at that time. Under the terms of the NCIP Agreement, Gish Oil committed to improving the Baytree Convenience Store as described above, and Phillips agreed to provide rebate payments to Gish Oil as an incentive for undertaking the costs of improving the Baytree store. The NCIP Agreement provided a range of options for how these rebate payments would be calculated. Gish Oil chose the option in which Phillips paid a rebate of two cents ($0.02) for every gallon of Phillips-branded gasoline sold at the Baytree store for the first thirty-six months that the NCIP Program was in place. (Id. at ¶¶8-11; Plaintiff's Facts, ¶¶4-5; Phillips 66's Statement of Additional Facts ("Plaintiff's Additional Facts"), Doc. 29, ¶¶1-4; NCIP Agreement Letter ("NCIP Agreement"), Doc. 20-4).

The NCIP Agreement also required Gish Oil to reimburse Phillips for the incentive payments under certain conditions. The contract stated:

> If for any reason, (1) the unit [the Baytree Convenience Store] ceases to be branded Phillips, or (2) the Branded Marketer Sales Contract between us is terminated, or (3) the lease of Phillips signs and imprinters for this unit is terminated, by either party during the ten-year period which begins with the first month in which payment is made pursuant to this NCIP Program, then Phillips' obligations to pay you … shall cease … and you shall refund to Phillips a portion of any sums Phillips has already paid….

If any of the three conditions occurred in the first seven years of the NCIP Program, then Gish Oil was obligated to refund 100% of the incentive payments.

Gish Oil had to reimburse 75% of the payments if an event triggering repayment occurred in the eighth or ninth year of the program and 50% of the payments if such an event took place in the tenth year. (NCIP Agreement, ¶ 6).

Gish Oil and Phillips began fulfilling the terms of the NCIP Agreement. In order to meet the contract's demands, Gish Oil decided to raze the existing structure at the Baytree location and construct a new building. Gish Oil used its own money to hire Phillips-approved contractors and vendors to comply with the specifications of the NCIP Program. For its part, Phillips had paid Gish Oil $162,013.93 by the end of February 2003 as incentive payments under the NCIP Agreement. Gish Oil believed that this money was paid to reimburse it for the expenses incurred in improving the Baytree Convenience Store. (Defendants' SMF, ¶¶9-12, 24, 32; Plaintiff's Facts, ¶8).

In addition to the other demands in the NCIP Agreement, Phillips required Gish Oil to continue selling the minimum gallons of Phillips-branded gasoline stated in their branded marketer agreement. (NCIP Agreement, ¶¶4, 6(2); Defendants' SMF, ¶13). The branded marketer agreement was a separate contract from the NCIP Agreement. In October 2004, Phillips[3] and Gish Oil entered a new branded marketer agreement ("the 2004 Branded Marketer Agreement" or "2004 Agreement"), which stated that its terms were to be in place

---

[3] As will be addressed below, at this point in time Phillips was actually ConocoPhillips. However, for the sake of clarity, the Court will continue to refer to "Phillips" while summarizing the facts except where expressly noted.

for three years. (2004 Branded Marketer Agreement, Doc. 28-1, ¶2). Under the 2004 Agreement, beginning on January 1, 2006, the annual volume of gasoline and distillate that Gish Oil was required to purchase from Phillips would be five million gallons. (Branded Contract Volume, Ex. A to 2004 Branded Marketer Agreement, ¶2). The minimum purchase requirement applied jointly to the six locations, including the Baytree Convenience Store, supplied by Gish Oil. (Location and Brands, Ex. A1 to 2004 Branded Marketer Agreement). Although the 2004 Agreement did not directly provide for incentive payments, it did contain the following provision:

> EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THIS AGREEMENT SUPERSEDES ALL PRIOR AND CURRENT BRANDED MARKETER AGREEMENTS BETWEEN THE PARTIES. FURTHERMORE THIS AGREEMENT CONTAINS EACH AND EVERY UNDERSTANDING OF THE PARTIES RELATING TO THE SUBJECT COVERED HEREBY. NO VERBAL REPRESENTATIONS, STATEMENT OR AGREEMENTS OF ANY NATURE RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT OR TO ANY RELATIONSHIP BETWEEN THE PARTIES WILL BE CONSIDERED VALID OR ENFORCEABLE.

(2004 Branded Marketer Agreement, ¶31).

In 2005 and 2006, Phillips warned Gish Oil that it would begin implementing a company-wide policy to terminate branded marketing agreements with all marketers which were not selling at least five million gallons

of Phillips-branded product each year. At that time, Gish Oil's annual sales fell well below this minimum threshold. In 2007, Phillips informed Gish Oil of modifications to the plan to end branded marketing agreements with marketers that were not meeting the sales goal. Phillips would continue its relationship with marketers that were annually selling less than five million gallons of product, but they would be placed in a separate program under an "Oasis" label. Marketers would only be placed in this program if they agreed to remodel their gas stations using the Oasis label by December 31, 2007. After six years in the program, marketers would again have to meet the requirement of annual sales of at least five million gallons of branded product. (Defendants' SMF, ¶¶14-16).

Gish Oil decided to end its relationship with Phillips and related affiliates. Gish Oil doubted its annual sales would ever reach five million gallons of product, and so decided that remodeling its gas stations under the Oasis label would be a wasted expense. Furthermore, Phillips-branded products were more expensive than unbranded products, which left Gish Oil at a disadvantage in the marketplace with respect to competitors. (Id. at ¶¶17-18, 22). Gish Oil removed the Phillips brand from the Baytree Convenience Store in October 2007, which was the ninth year that the store had been in the NCIP Program. (Plaintiff's Facts, ¶7).

In August 2002, Phillips had merged with Conoco Inc. to form ConocoPhillips Company ("ConocoPhillips"). Wanting "consistency" in the programs it was offering, ConocoPhillips subsequently ceased offering marketers the opportunity to enter the NCIP Program. In May 2012, ConocoPhillips also formed a new company, Phillips 66, to handle the parent company's refined products. (Deposition of Paul Curtis, Doc. 20-5, pp. 10-14, 23; Defendants' SMF, ¶31). ConocoPhillips assigned to Phillips 66 the rights it had under the NCIP Agreement and the Gish Guaranty, including the right to collect on any indebtedness under those agreements. (Affidavit of Paul Curtis, Doc. 18-7, ¶8).

On May 10, 2013, after multiple written demands to be reimbursed for the incentive payments, Phillips 66 filed suit in this Court against Gish Oil, Raymon Gish, and Helen Gish. Plaintiff alleges that, by debranding the Baytree Convenience Store in the ninth year of the NCIP Program, Gish Oil triggered its obligation to repay 75% of the incentive payments from Phillips and that the failure to reimburse the money breached the NCIP Agreement. Plaintiff consequently seeks a judgment against Gish Oil in the amount of $121,510.45, which is 75% of the incentive payments under the NCIP Agreement, plus interest and attorney fees. According to Plaintiff, Raymon and Helen Gish are also liable for these sums because they are guarantors of Gish Oil's indebtedness to Phillips 66. (Complaint, Doc. 1, ¶¶8-30). Plaintiff has now filed a motion for

summary judgment seeking a judgment against Gish Oil, Raymon Gish, and Helen Gish for $121,510.45 plus interest.[4]

Defendants lay out various theories for why they, and not Phillips 66, are entitled to summary judgment. Defendants make two alternative arguments for why they should not have to reimburse Plaintiff for the incentive payments: (1) the repayment provision of the NCIP Agreement is unenforceable because it serves as a penalty, not a liquidated damages clause, and (2) the NCIP Agreement was superseded by the 2004 Branded Marketer Agreement. Furthermore, Defendants contend that, even if they are not entitled to summary judgment, Phillips 66's summary judgment motion should be denied because disputed material facts remain with regard to the amount of damages and with regard to Defendants' affirmative defenses of lack of consideration, waiver, estoppel, and anticipatory repudiation. Raymon and Helen Gish do not argue that the Gish Guaranty is invalid or that Phillips 66 has no right to enforce the guaranty with respect to the NCIP Agreement. They only rely on the underlying defenses that Gish Oil raises.

---

[4] Although Phillips 66 initially sought summary judgment on the claim for attorney fees, it has since conceded to having a jury determine this claim. (Phillips 66's Reply in Support of Summary Judgment, Doc. 26, p. 10).

### III.    Legal Analysis

Based on the undisputed factual record, Plaintiff is entitled to summary judgment, and Defendants are not. Therefore, Plaintiff's motion for summary judgment is granted, and Defendants' motion is denied.

### A.    Plaintiff's Breach of Contract Claim under the NCIP Agreement

Gish Oil breached the NCIP Agreement with Phillips, and Defendants must therefore repay the incentive payments in accordance with the contract. The elements for breach of contract in Georgia are clear. To establish its breach of contract claim, Plaintiff must first prove the existence of a contract with Gish Oil, requiring subject matter, consideration, and the parties' mutual assent to all essential terms. *See* Lamb v. Decatur Federal Sav. & Loan Ass'n, 201 Ga. App. 583, 585, 411 S.E.2d 527 (1991); O.C.G.A. § 13-3-1 (providing the elements of a contract). Plaintiff must then show its predecessor's performance under the contract, Gish Oil's breach of the contract, and the damages from that breach. *See* Layer v. Clipper Petroleum, Inc., 319 Ga. App. 410, 413, 735 S.E.2d 65 (2012); Jones v. Cent. Builders Supply Co., 217 Ga. 190, 195-96, 121 S.E.2d 633 (1961).

The NCIP Agreement clearly constituted a contract between Phillips and Gish Oil. The subject matter of the agreement concerned Gish Oil's refurbishing of the Baytree Convenience Store and the rebate payments on gasoline Phillips

provided as incentives for the work. Furthermore, there is no dispute that Gish Oil assented to the terms of the contract; Raymon Gish, as president of Gish Oil, signed the agreement. Defendants contend that the agreement fails to be a valid contract from a lack of consideration, but their argument is unconvincing. The consideration provided by Gish Oil was to make various improvements to the Baytree store, and Phillips's consideration was rebate payments to Gish Oil on branded gasoline sold at the store. These were not pre-existing obligations because the branded marketer agreements the parties entered at various points dealt with separate, even if related, matters.

Having established the existence of a binding contract with Gish Oil, Plaintiff has also shown the other elements for a breach of contract claim. Phillips performed its duties under the NCIP Agreement by making rebate payments on the gasoline that was sold at the Baytree Convenience Store. Conversely, Gish Oil breached the contract when it refused to reimburse 75% of the payments after its obligation to do so was triggered by the debranding of the Baytree Convenience Store in 2007. Finally, Plaintiff has been damaged by the breach because it has lost the 75% of the rebate payments to which, via its predecessor, it is entitled under the NCIP Agreement.

### B.    Defendants' Arguments

Defendants raise two arguments for why they are entitled to summary judgment on Plaintiff's claims. As for Plaintiff's motion for summary judgment, Defendants maintain that remaining factual disputes preclude summary judgment. However, none of Defendants' arguments convince the Court that they are entitled to summary judgment or that Plaintiff is not.

### 1.    Whether Defendants are entitled to summary judgment

Defendants' first argument for why they are entitled to summary judgment is that the repayment provision in the agreement is unenforceable as imposing a penalty in the guise of liquidated damages, but this line of attack is misdirected. According to the Defendants' theory, the NCIP Agreement kept the possibility of having to repay the incentive rebates hanging over Gish Oil's head to dissuade the company from debranding the Baytree Convenience Store, which Gish Oil contends would have been a breach of the agreement. However, as Plaintiff points out, this position is contrary to principles of Georgia law and the clear language of the NCIP Agreement.

As the Georgia Court of Appeals held in Duke v. Williams, "A liquidated damages analysis is inapplicable to … [an] agreement [that] does not purport to be a stipulated sum for damages for a breach." 197 Ga. App. 836, 837, 399 S.E.2d 544 (1990). The contract at issue in Duke concerned consulting services

and required the client to pay a minimum retainer fee of $213,200 over two years in weekly installments. Soon after signing the agreement, the client terminated the consulting services and refused to pay the minimum fee, arguing in the subsequent lawsuit that the fee was an unenforceable penalty. The appellate court disagreed. The court noted that the requirement for the client to pay the minimum retainer fee was not an attempt by the parties to stipulate to what the damages might be in the event of a breach. Id. at 836-38, 399 S.E.2d 544. Because the contract provisions "d[id] not in any fashion connect Duke's obligation to pay the minimum fee with any breach of the contract, they [could] not be a liquidated damages provision." Id. at 838, 399 S.E.2d 544. Thus, the liquidated damages test had no application to that contract. Id.

As was the case in Duke, there is nothing in the NCIP Agreement or the facts of this case that would lead the Court to conclude that the provision requiring Gish Oil to reimburse Phillips in certain circumstances was a penalty disguised as a liquidated damages clause. Deciding whether the provision was a valid attempt to anticipate damages or an unenforceable penalty is not necessary because there is no evidence that the parties were seeking to liquidate damages with the provision. Two aspects of the NCIP Agreement make this clear. First, the terms of the contract did not prohibit Gish Oil from removing the Phillips brand from the Baytree store. The agreement only required that if the store was

debranded within ten years of the first incentive payment, then Gish Oil would have to reimburse Phillips for some or all of the payments, depending on when the debranding occurred. Second, Gish Oil would have to repay the incentive payments even if it were Phillips that caused one of the three conditions triggering the reimbursement obligation. As stated in the contract, "*If for any reason*, (1) the unit ceases to be branded Phillips, or (2) the [brander marketer contract] is terminated, or (3) the lease of [signs] is terminated, *by either party* during the ten-year period … you shall refund to Phillips a portion of any sums Phillips has already paid…." (emphasis added). This provision was neither a liquidated damages clause nor a penalty; it merely required repayment of incentive rebates if certain conditions transpired. Summary judgment for Defendants on the basis that the reimbursement requirement was an unenforceable penalty is not warranted.

Alternatively, Defendants maintain that they are entitled to summary judgment on the grounds that the 2004 Branded Marketer Agreement superseded the NCIP Agreement, but this position is contrary to the clear terms of the 2004 contract. The 2004 Branded Marketer Agreement stated that "THIS AGREEMENT SUPERSEDES ALL PRIOR AND CURRENT BRANDED MARKETER AGREEMENTS BETWEEN THE PARTIES. FURTHERMORE THIS AGREEMENT CONTAINS EACH AND EVERY UNDERSTANDING OF THE

PARTIES RELATING TO THE SUBJECT COVERED HEREBY." The NCIP Agreement was a contract for Phillips to make rebate payments to Gish Oil as incentives for the other party to take certain actions with regard to the Baytree Convenience Store. The NCIP contract was not a branded marketer agreement. Thus, it was not expressly superseded by the 2004 contract. Nor was the "subject covered" by the 2004 Branded Marketer Agreement the same as the subject addressed by the NCIP Agreement. The branded marketer agreements set the minimum gallons of gasoline that Gish Oil would have to purchase each year from Phillips, or affiliated companies, for all of the gas stations to which Gish Oil provided gasoline. On the other hand, the NCIP Agreement only dealt with incentive payments to Gish Oil for updating and improving one store, the Baytree Convenience Store. In no sense could the 2004 Branded Marketer Agreement be said to have superseded the NCIP Agreement. Defendants' summary judgment motion is denied.

### 2.   Whether Defendants have established a genuine factual dispute that would require denial of Plaintiff's motion for summary judgment

Even if Defendants' motion for summary judgment is denied, they insist that there are remaining disputes of material fact that preclude summary judgment in favor of Phillips 66. However, Defendants fail to establish a genuine dispute of material fact with their arguments.

First, Defendants argue, unconvincingly, that there are disputed issues of material fact for whether Plaintiff has suffered damages from any breach of the NCIP Agreement and the amount of damages. They cite to the general rule of contract law that "the purpose of damages is to place an injured party in the same position as it would have been in had there been no injury or breach of duty." Home Ins. Co. v. North River Ins. Co., 192 Ga. App. 551, 558, 385 S.E.2d 736 (1989). Defendants have not created a genuine factual dispute on the question of damages. Clearly Plaintiff has suffered damages, whose amount can be easily determined, because Defendants have refused to repay the $121,510.45 which they owe under the NCIP Agreement and which was a portion of what Phillips originally provided to Gish Oil as incentive rebate payments. Phillips 66, as the successor to Phillips, now stands in the position to collect on those damages. Contrary to Defendants' contention, to prove damages Plaintiff does not have to show that it or its predecessors lost sales because of Gish Oil's breach of the NCIP Agreement. There is no real question over whether damages occurred or in what amount.

Next, Defendants contend that summary judgment in favor of Phillips must be denied because there is a genuine factual dispute as to whether the NCIP Agreement fails for a lack of consideration, which Defendants raise as an affirmative defense, but their argument is contrary to the record. As has been

addressed, both parties to the agreement provided consideration. Phillips gave Gish Oil rebate payments on the branded gasoline sold at the Baytree Convenience Store, and in return Gish Oil renovated the gas station. There is no evidence that these were pre-existing obligations for the parties. As things turned out, Gish Oil might have been unhappy with the NCIP Agreement, but that does not change the fact that there was valid consideration for the contract.

Defendants additionally argue that Phillips, after merging with Conoco, waived any rights it had under the NCIP Agreement and is therefore estopped from receiving reimbursement for the incentive payments, but there are no facts to support these affirmative defenses. Defendants seem to base their argument on the fact that after the merger ConocoPhillips discontinued offering the NCIP Program to marketers in approximately 2002. Nevertheless, regardless of the decision to discontinue offering the program, there is no evidence that ConocoPhillips waived its rights with regard to the specific contract with Gish Oil. The parties' rights and obligations under the NCIP Agreement continued. The defenses of waiver and estoppel have no factual foundation.

There is likewise no evidence to support Defendants' contention that Plaintiff anticipatorily repudiated the agreement and that Gish Oil's contractual performance is consequently excused. Defendants argue that there is a factual dispute for whether Plaintiff, through its predecessor ConocoPhillips, repudiated

the contract by informing Gish Oil that the Baytree Convenience Store would have to be rebranded under the Oasis label by 2007. However, by making this demand Plaintiff was not repudiating the NCIP Agreement. "The anticipatory repudiation of a contract occurs when one party thereto repudiates his contractual obligation to perform *prior to the time* such performance is required under the terms of the contract." Textile Rubber & Chem. Co. v. Thermo-Flex Techs., Inc., 301 Ga. App. 491, 494, 687 S.E.2d 919 (2009) (quoting Coffee Butler Svc. v. Sacha, 258 Ga. 192, 193, 366 S.E.2d 672 (1988)) (emphasis added). Since the demand for the Baytree store to be rebranded did not occur until after Phillips had completed its contractual performance by making the incentive payments, Plaintiff did nothing that constituted anticipatory repudiation.

### C.  Plaintiff's Claim for Attorney Fees

The final issue to be addressed concerns attorney fees for Plaintiff. In its motion for summary judgment, Plaintiff maintained that it was entitled to attorney fees under O.C.G.A. § 13-6-11 because Defendants have acted in bad faith by refusing for several years to reimburse the incentive payments and forcing Plaintiff to file this lawsuit. Defendants have argued in response that whether a party is entitled to attorney fees under O.C.G.A. § 13-6-11 is typically a question of fact that must be decided by  the factfinder, in this case a jury, which has led Plaintiff to drop the request for summary judgment on the claim for attorney fees.

However, neither Plaintiff nor Defendants have addressed a seemingly relevant provision of the NCIP Agreement in which Gish Oil "agree[d] to defend, indemnify and save harmless, Phillips, its … parent, affiliates or subsidiaries, from and against any and all claims, losses, liabilities, causes of action, costs and expenses (including attorney's fees) of whatsoever nature arising, directly or indirectly, out of this contract and/or the conduct of the parties to this letter agreement." (NCIP Agreement, ¶9). If it wishes to do so, Plaintiff may file a brief, not to exceed seven pages in length, addressing whether and how this provision might provide a basis for the claim of attorney fees to be determined in its favor as a question of law rather than a question of fact. The brief must be filed not later than September 20, 2014. Defendants may file a response brief, not to exceed seven pages in length, not later than September 27, 2014.

## IV.   Conclusion

In light of the foregoing, Defendants' Motion for Summary Judgment (Doc. 20) is denied. Phillips 66's Motion for Summary Judgment (Doc. 17) is granted in part, and the Court will reserve ruling on the claim for attorney fees. Plaintiff has up to and including September 20, 2014 to file a brief on the provision in the NCIP Agreement relating to attorney fees, and Defendants must file any response not later than September 27, 2014. If Plaintiff does not file a supplemental brief on its claim for attorney fees, then this claim will be set for

trial. The Court delays entering judgment for Plaintiff until after the parties, if they choose to do so, provide supplemental briefs on the question of attorney fees.

**SO ORDERED**, this the 10th day of September, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr